8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

11 ALTON KING, ) Case No. 1:15-cv-00698-AWI-SAB (PC)
)
12 Plaintiff, )
) **FINDINGS AND RECOMMENDATIONS**
13 v. ) **REGARDING DEFENDANT CALISTRO'S**
) **MOTION FOR SUMMARY JUDGMENT**
14 CALISTRO, )
) [ECF No. 34]
15 Defendant. )
)
16 _____ )

17     Plaintiff Alton King is appearing pro se and in forma pauperis in this civil rights action

18 pursuant to 42 U.S.C. § 1983.

19     Currently before the Court is Defendant Calistro's motion for summary judgment, filed April

20 17, 2017.

21 **I.**

22 **PROCEDURAL BACKGROUND**

23     This action is proceeding solely against Defendant Licensed Vocational Nurse Calistro for

24 deliberate indifference to a serious medical need and retaliation.

25     On May 12, 2016, Defendant filed an answer to the complaint. On May 16, 2016, the Court

26 issued the discovery and scheduling order.

27

28

As previously stated on April 17, 2017, Defendant Calistro filed a motion for summary judgment. After receiving an extension of time, Plaintiff filed an opposition on June 20, 2017. After receiving two extensions of time, Defendant filed a reply on August 3, 2017.

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de

*Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Summary of Plaintiff's Second Amended Complaint

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is incarcerated at Valley State Prison. On or about July 23, 2013, Plaintiff was in the pill line to receive his medication and Licensed Vocational Nurse ("LVN") Calistro was dispensing medications to inmates. (Sec. Amd. Compl. ¶ 7, ECF No. 13.) LVN Calistro noticed that Plaintiff's medication had been increased from 15 mg to 30 mg and asked Plaintiff how he had managed to get his Morphine dosage increased. (Id. at ¶ 8.) Plaintiff informed LVN Calistro that the doctor had increased his medication due to the severity of his pain. (Id. at ¶ 9.)

On August 18, 2013, Plaintiff went to receive his medication and LVN Calistro was dispensing medication. (Id. at ¶ 10.) Plaintiff had difficulty swallowing due to a recent Tonsillectomy, adenoidectomy, and left neck mass dissection surgery. (Id.) Pursuant to prison procedures, LVN Calistro asked Plaintiff to open his mouth to make sure that he had swallowed his medication. (Id.) After checking Plaintiff's mouth, LVN Calistro indicated that Plaintiff was to leave. (Id. at ¶¶ 11, 12.)

On August 21, 2013, Plaintiff went to receive his medication and discovered that his prescription had been changed from a time release pill to a pill that had to be crushed to powder and mixed with water. (Id. at ¶ 13.) Plaintiff was informed that his Morphine had been discontinued because LVN Calistro had claimed that she caught him cheeking his medication. (Id. at ¶¶ 14, 15.) Cheeking, which is forbidden, occurs where an inmate does not swallow his medication, but conceals

3

it in his cheek to sell or use at a later time.  (Id. at ¶ 16.)

After being told of the allegations, Plaintiff went to speak with Correctional Officer Spears. (Id. at ¶ 20.)  Officer Spears told Plaintiff that LVN Calistro never informed him that Plaintiff had been caught cheeking his medication on August 18, 2013.  (Id. at ¶ 21.)

Officer Spears informed Plaintiff that medical staff were required to notify him if any inmate was suspected of cheeking medications, then question and search the inmate, and take whatever action was appropriate and necessary.  (Id. at ¶ 22.)

Officer Spears volunteered to be a witness on Plaintiff's behalf.  (Id. at ¶ 23.)

The last day Plaintiff received morphine medication was on August 23, 2013, due to Calistro's false accusations regarding him cheeking his medications.  (Id. at ¶ 24.)

Plaintiff contends that due to LVN Calistro falsely stating that he was caught cheeking his medication, he was placed on an ineffective pain medication regimen which caused him to suffer withdrawal and constant severe pain.  (Id. at ¶¶ 26-29.)

Plaintiff contends the reason LVN Calistro falsely accused him of cheeking was to discontinue the morphine medication as a way of retaliation and punishing him.  (Id. at ¶ 26.)  Prior to LVN Calistro claiming that Plaintiff cheeked his medication, he filed an inmate appeal regarding inadequate medical care following his neck surgery.  (Id. at ¶ 47.)  Plaintiff appeared in the pill line on an unidentified date and LVN Calistro asked him why he filed an inmate appeal.  (Id. at 48.)  LVN Calistro alleged told Plaintiff that she was "tired of these scum bag inmates always complaining about inadequate medical care, when most of them never had any medical insurance or treatment when they were free."  (Id. at ¶ 49.)  LVN Calistro informed Plaintiff that she did not think he needed Morphine. (Id. at ¶ 50.)

**B.    Defendant's Evidentiary Objections**

Defendant objects to portions of Plaintiff's declaration and the declaration of inmate Donald Deutsch submitted in support of Plaintiff's opposition.  (ECF No. 51-1.)  More specifically, Defendant objects to the following paragraphs of Plaintiff's depositions: (1) paragraphs 10-12 on the ground it contains inadmissible hearsay; (2) paragraphs 14-16 to the extent that it is not based on Plaintiff's knowledge, is speculative, and lacks foundation; and (3) paragraphs 17 and 19 because it contains

legal conclusions that are not proper opinion testimony, is speculative, and not based on Plaintiff's personal knowledge. (Id. at 51-1, p. 2.) Defendant objects to paragraphs 4-8 of the declaration of inmate Donald Deutch to the extent it contains statements allegedly made by non-parties, and contains inadmissible hearsay. (Id.)

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself, and are thus "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of California, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."). Thus, the Court does not consider such objections, and will only address the objections that are considered relevant and material to resolving the instant motion in the analysis section below.

### C. Defendant's Statement of Undisputed Facts

1. Plaintiff Alton King (T-83180) is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR). (ECF No. 11 at ¶ 6 [Sec. Am. Compl.].)

2. At all times relevant to this lawsuit, Plaintiff was housed at Valley State Prison (VSP) in Chowchilla, California. (Id. at ¶¶ 3, 6.)

3. Defendant Sonya Calistro has been employed as a Licensed Vocational Nurse (LV) with CDCR since April 2007. (Calistro Decl. ¶ 2.)

4. At all times relevant to this lawsuit, LVN Calistro was assigned to work in the Facility B Medical Clinic at VSP. (Calistro Decl. ¶ 2.)

5. LVN Calistro is sued in her individual capacity only. (ECF No. 11 at 7 [Sec. Am. Compl.].)

6. As an LVN, Calistro's responsibilities include dispensing medication to inmates, making handwritten notes of any observable physical injuries to inmates or correctional staff, and relaying inmates' requests for medical care to the medical department. (Calistro Decl. ¶ 3.)

7. As an LVN, Calistro is not qualified, nor does she have the authority, to prescribe medication, or to renew or revoke a prescription for medication. (Barnett Decl. ¶ 19; Calistro Decl. ¶ 4; Hood Decl., Ex. A at 43:16-19.)

5

8.      As an LVN, Calistro is also not qualified to second guess the treatment decisions, including the prescription of medication, of an inmate's treating physicians.  (Calistro Decl. ¶ 4.)

9.      If LVN Calistro notices that an inmate's medication dosage has changed, she may inquire about it solely as a precaution in order to ensure no errors have been made by the pharmacy. (Calistro Decl. ¶ 4.)

10.      Prescription medication is administered to inmates at VSP in several ways.  (Calistro Decl. ¶ 5.)

11.      Keep-on-Person (KOP) medications are those that the prescriber believes can safely be self-administered by the inmate to himself.  (Calistro Decl. ¶ 5.)

12.      However, certain medications are not approved as KOP, including mental health medications that affect an inmate's psychological stability, medications used for treatment of diseases that are considered to be a public health concern, and all controlled substances (such as opioids). (Calistro Decl. ¶ 5.)

13.      In addition, certain categories of medications may be restricted from KOP due to the seriousness of side effects, potential for abuse, the narrow therapeutic threshold and overdose risk, and the possibility that they could be hoarded or sold to other inmates.  (Calistro Decl. ¶ 5.)

14.      Medications that are excluded from KOP are generally administered through Direct Observation Therapy (DOT) or, under select circumstances, are Nurse Administered (NA).  (Calistro Decl. ¶ 5.)

15.      In a practice called checking, an inmate will pretend to swallow their DOT medication, but in reality they have hidden the medication at the back of the throat, under the tongue, or between the cheek and gums.  (Calistro Decl. ¶ 6.)

16.      Cheeking is an effort to deceive prison medical staff into believing that the medication administered was ingested when it was actually not taken as directed.  (Barnett Decl. ¶ 16; Calistro Decl. ¶ 6.)

17.      In the prison environment, all prescribed opioids, including morphine, are provided to inmates by DOT as a precaution against cheeking.  (Barnett Decl. ¶¶ 12-13; Calistro Decl. ¶ 7.)

18.      DOT means that the dispensing nurse will watch the inmate swallow his medication,

6

and then examine the inmate's open mouth to verify that the inmate actually swallowed it. (Barnett Decl. ¶ 12; Calistro Decl. ¶ 7; Hood Decl., Ex. A at 22:4-23:4 [Pl. Dep.].)

19.    The dispensing nurse may also request to view the inmate's empty cup, and take any other necessary and reasonable measures to ensure the medication has been swallowed, such as requesting to view the inmate's hands and requesting that the inmate empty his pockets.[1] (Calistro Decl. ¶ 7.)

20.    Cheeking DOT medication is impermissible for several reasons. (Barnett Decl. ¶ 16; Calistro Decl. ¶ 8.)

21.    It gives medical staff the impression that the inmate is medication-compliant when he is not. (Calistro Decl. ¶ 8.)

22.    This false impression can lead to a dangerous increase in the doses of medication subsequently ordered by a physician who wrongly believes the prescribed amount is insufficient, when in fact the prescribed drug has not been taken. (Barnett Decl. ¶ 16.)

23.    Cheeking is also very dangerous because cheeked medication can be hoarded for bulk ingestion at a later date in an amount that can intoxicate or cause death by overdose. (Barnett Decl. ¶ 16.)

24.    Inmates have also been known to check medication in order to barter and sell it to other inmates. (Barnett Decl. ¶ 16; Calistro Decl. ¶ 8.)

25.    Any of these practices can seriously and adversely affect the health of the inmate patient, the inmate population, and the safety and security of the CDCR. (Barnett Decl. ¶ 16; Calistro Decl. ¶ 8.)

26.    It is LVN Calistro's duty under applicable CDCR and CCHCS rules, policies, and operating procedures to document and report all of her observations when an inmate does not appear

---

[1] Plaintiff attempts to dispute this fact by denying that a nurse may order an inmate to empty his pockets or search them because that is the job of the correctional officer on duty to observe pill-line inmates. However, such allegation does not render this statement of fact disputed because the statement does not indicate a nurse is authorized to physically search an inmate or that a nurse is authorized to order an inmate to do anything.

to be swallowing the medication given to him.[2]  (Barnett Decl. ¶ 15; Calistro Decl. ¶ 9.)

27.    Anytime LVN Calistro suspects that an inmate is not taking his prescribed medication, she is required to notify the prescriber of the medication in writing using a CDCR-128C.  (Calistro Decl. ¶ 9.)

28.    Such notification requires only that LVN Calistro document her own personal observations regarding her suspicion that an inmate has cheeked his medication.  (Calistro Decl. ¶ 9.)

29.    LVN Calistro does not make any sort of recommendation or request with respect to how the inmate's medical care provider decides to follow up or act on her observations, if at all. (Calistro Decl. ¶ 9.)

30.    During the month of July 2013, Plaintiff was prescribed 15 milligrams to be taken three times a day.  (Barnett Decl., Ex. B at 0002-03, 0007, 0010-11.)

31.    LVN Calistro was not at work on July 23, 2013.  (Calistro Decl. ¶ 19, Ex. B.)

32.    In fact, LVN Calistro was out of work for nearly the entire month of July 2013, due to a medical condition, and she collected State Disability Insurance (DSI) during that time.  (Calistro Decl. ¶ 19.)

33.    LVN Calistro returned to work on July 29, 2013.  (Calistro Decl. ¶ 19.)

34.    On August 1, 2013, Plaintiff's physician increased his evening morphine dosage from 15 milligrams to 30 milligrams.  (Barnett Decl. ¶ 14, Ex. B at 0014.)

35.    On August 18, 2013, LVN Calistro was working the pill window at the Facility B Medical Clinic during Third Watch.  (Calistro Decl. ¶ 10.)

36.    The pill window is used to dispense DOT medications.  (Calistro Decl. ¶ 10.)

37.    During the 5:00 p.m. distribution of medications, Plaintiff came to the pill window for his evening dose of morphine, which is a DOT medication.  (Calistro Decl. ¶ 11.)

---

[2] Plaintiff attempts to dispute this fact and several other facts by stating he has no personal information upon which to base an informed response.  However, mere denials based on lack of personal knowledge are insufficient to create a dispute of fact.  Gasaway v. Northwestern Mut. Life Ins. Col, 26 F.3d 957, 959-60 (9th Cir. 1994).  Accordingly, those denials do not place any of the factual statements in dispute.

8

38.    Correctional Officer R. Spears was standing in the doorway of the Clinic observing the 5:00 p.m. distribution of medications and providing security for patient-inmates and health care staff. (Spears Decl. ¶¶ 3-4.)

39.    LVN Calistro dispensed Plaintiff's morphine to him in a small pill cup.  (Calistro Decl. ¶ 11.)

40.    Plaintiff emptied the cup with the morphine pill into his mouth and appeared to drink some water.  (Calistro Decl. ¶ 11.)

41.    Having undergone neck surgery in mid-July, Plaintiff claims he was still experiencing difficulties swallowing as of August 18, 2017.  (Hood Decl., Ex. A at 20:10-19; 31:6-25 [Pl. Dep.]; ECF No. 11 at ¶ 10 [Sec. Am. Compl].)

42.    However, on July 31, 2017, Plaintiff's surgeon reported full healing of the surgical site and recommended that Plaintiff resume normal activities and a normal diet.  (Barnett Decl. ¶ 17, Ex. B at 0014.)

43.    Plaintiff claims he had difficulty swallowing his medication, but cannot recall if he swallowed the pill on his first try, or simply gave the impression that he was unable to swallow the pill.  (ECF No. 11 at 8, ¶ 10 [Sec. Am. Compl.]; Hood Decl., Ex. A at 34:7-35:2 [Pl. Dep.].)

44.    LVN Calistro then asked Plaintiff to open his mouth, consistent with the applicable medication management protocol, so that she could confirm he had actually swallowed the pill. (Calistro Decl. ¶ 11.)

45.    By the time Officer Spears arrived at the pillow window, Plaintiff had already swallowed his morphine.  (Calistro Decl. ¶ 13; Spears Decl. ¶ 5.)

46.    When Officer Spears arrived, LVN Calistro told him that Plaintiff had not swallowed the medication and that she believed he was attempting to cheek it.  (Calistro Decl. ¶ 13.)

47.    Based on Officer Spear's personal observations, he cannot verify that Plaintiff did not cheek his morphine.  (Spears Decl. ¶ 6.)

48.    Officer Spear's did not personally observe a morphine pill in Plaintiff's mouth.  (Spears Decl. ¶ 7.)

49.     Plaintiff understands that if an inmate is caught cheeking, he must be written up in a "128." (Hood Decl. Ex A at 44:4-6 [Pl. Dep.].)

50.     Later in the day on August 18, 2017, LVN Calistro drafted a 128C where she documented that she caught Plaintiff "Cheeking Narcotic." (Calistro Decl. ¶ 15, Ex. A.)

51.     LVN Calistro further explained in the 128C that "[w]hen [Plaintiff] was asked to open his mouth so [she] could verify [the] narcotic was taken, morphine was clearly visible on the back of [his] tongue. [Plaintiff] denied cheeking medication. Medication was finally taken." (Calistro Decl. ¶ 15, Ex. A.)

52.     In the 128C, LVN Calistro also documented Plaintiff's statement that he had not cheeked his medication. (Calistro Decl. ¶ 16.)

53.     In the 128C, LVN Calistro did not recommend or request that any specific action be taken. (Calistro Decl. ¶ 16.)

54.      This is because, as set forth above, LVN Calistro is not authorized or qualified to revoke an inmate's prescription medication, or even to request revocation. (Calistro Decl. ¶ 17.)

55.     There is no uniform or standard requirement that a prescription be immediately revoked simply because the inmate is suspected of cheeking. (Barnett Decl. ¶ 20; Calistro Decl. ¶ 17.)

56.     Each inmate who is suspected of cheeking medication is subsequently evaluated by his prescriber on a case-by-case basis, and action taken, if any, is tailored to that inmate's individual circumstances and needs. (Barnett Decl. ¶ 20; Calistro Decl. ¶ 17.)

57.      Thus, it was the responsibility of Plaintiff's physician—not LVN Calistro—to evaluate the report that Plaintiff had cheeked his medication and to determine if any action should be taken. (Barnett Decl. ¶ 20.)

58.     An inmate with a medical necessity for morphine who is prone to diversion or cheeking will still receive the morphine, but in liquid or crushed form so that it cannot be cheeked. (Barnett Decl. ¶ 20.)

59.     After LVN Calistro reported her observation that Plaintiff cheeked morphine on August 18, 2013, Plaintiff's physician made the decision to discontinue his prescription and to slowly taper him off the drug. (Barnett Decl. ¶ 21; Ex. B at 0019-21.)

60. LVN Calistro played no role in the decision to taper and discontinue Plaintiff's morphine prescription. (Hood Decl., Ex. A at 58:10-14 [Pl. Dep.].)

61. Tapering means that Plaintiff's morphine prescription was reduced from 300 milligrams to 15 milligrams for a period of seven days, then to 7.5 milligrams for seven days after that, and then the prescription was discontinued. (Barnett Decl. ¶ 21, Ex. B at 0019, 0021.)

62. Tapering is done to mitigate or eliminate physical discomfort that may be caused by withdrawal from opiates. (Barnett Decl. ¶ 21.)

63. After being tapered off of morphine, Plaintiff was still provided with carbamazepine, which is a non-narcotic medication used to treat neuropathic pain. (Barnett Decl. ¶ 22, Ex. B at 0020.)

64. In addition, limited amounts of over-the-counter pain medication would have been available to Plaintiff at the prison's canteen. (Barnett Decl. ¶ 22, Ex. C.)

65. Plaintiff was not barred from being prescribed morphine again in the future so long as he had a medical need for it. In fact, notwithstanding LVN Calistro's report of cheeking, Plaintiff's physician subsequently prescribed Plaintiff a limited course of morphine to relieve his self-reported increase in pain. (Barnett Decl. ¶ 22; Hood Decl., Ex A. at 55:21-23 [Pl. Dep.].)

66. Plaintiff was tapered off of morphine because the risks of regular narcotic administration exceeded the benefits. (Barnett Decl. ¶ 22.)

67. In fact, in assessing the propriety of prescribing Plaintiff with morphine on September 10, 2013, a physician found no evidence to support Plaintiff's continued use of opioids, instead finding that Plaintiff was at "high risk for complications [from morphine], including overdose, death and misuse; avoid opiates." (Barnett Decl. ¶ 28, Ex. B at 0025.)

68. Morphine is an opioid and a controlled substance that causes serious harmful side effects if taken improperly, including addiction and death. (Barnett Decl. ¶ 12.)

69. Over long periods of time, however, morphine becomes less effective at the original dose (tachyphylaxis), and leads patients to demand increased doses with untoward effect (addiction). (Barnett Decl. ¶ 25.)

70. The side effects from morphine include lethargy, severe constipation, itching, fluid retention, depression, sleep disturbance, respiratory compromise, paradoxically increased pain, and sudden death. (Barnett Decl. ¶ 25.)

71. Moreover, modern research has cast serious doubt on the effectiveness of opiates in relieving chronic pain, and the standards for best practices in effect throughout 2013 and to present day have disfavored the use of morphine to treat chronic pain that is not associated with cancer. (Barnett Decl. ¶ 25.)

72. Plaintiff's medical records show that, in accord with best practices and national guidelines, multiple physicians caring for Plaintiff have not issued him long-term prescriptions for morphine. (Barnett Decl. ¶ 26.)

73. As recently as March 15, 2017, Plaintiff was not being treated with morphine. (Barnett Decl. ¶ 26, Ex. B at 0034.)

74. Patients with chronic pain associated with back surgery, like Plaintiff, may suffer unremitting discomfort despite all medical therapies, and are often never pain free. (Barnett Decl. ¶ 29; ECF No. 11 at 39 [Sec. Am. Compl., Ex. C].)

75. Rather than seek to eliminate all pain, best practices try to reduce the pain sufficiently to permit normal function and activities of daily living (eating, bathing, dressing, walking and toileting) without the assistance of others. (Barnett Decl. ¶ 29; ECF No. 11 at 39 [Sec. Am. Compl.].)

76. There is no support in Plaintiff's medical records to demonstrate that he suffers from any impairment in his ability to eat, bathe, dress, walk, use the toilet, sleep, or engage in other ordinary daily living activities. (Barnett Decl. ¶ 29.)

77. VSP has an inmate appeals process by which prisoners may lodge complaints about their conditions of confinement, CDCR or institutional policies and procedures, or the way that they have been treated by staff. (Calistro Decl. ¶ 18.)

78. During the course of her employment at VSP, LVN Calistro is aware of several inmates appeals that were filed against her. (Calistro Decl. ¶ 18.)

79. LVN Calistro considered it part of the job. (Calistro Decl. ¶ 18.)

80.     If Plaintiff, or any other inmate, filed an inmate appeal in which he named LVN Calistro, or complained about her or other nursing staff, it would not influence the way that she did her job or cause her to do her job any differently.  (Calistro Decl. ¶ 18.)

81.     Plaintiff filed a CDCR 602 inmate appeal on August 1, 2013, complaining that he was having problems swallowing due to throat surgery, he was unable to eat solid food, and the nursing staff was making him drink Gatorade too quickly.  (Hood Decl., Ex. A at 28:13-29:10 [Pl. Dep.].)

82.     The log number for the appeal was VSP-HC-13001138.  (Hood Decl., Ex. A at 30:3 [Pl. Dep.].)

83.     Plaintiff did not name LVN Calistro in the appeal.  (ECF No. 11 at 26-27 [Sec. Am. Compl.].)

84.     LVN Calistro was not involved in adjudicating the appeal at any level of review.  (ECF No. 11 at 26-34 [Sec. Am. Compl.].)

85.     Plaintiff has seen LVN Calistro many times prior to August 1, 2013, and LVN Calistro was always courteous to Plaintiff regarding his medication.  (Hood Decl., Ex. A at 26:11-18 & 27:25-28:6 [Pl. Dep.].)

### D.     Findings on Defendant's Motion

Defendant argues that Plaintiff's retaliation claim fails because LVN Calistro had no retaliatory motive and her actions reasonably advanced legitimate correctional goals.  In addition, with respect to Plaintiff's deliberate indifference claim, LVN Calistro did not know what action, if any, would be taken when she reported her observation, and she played no role in the decision to discontinue Plaintiff's morphine prescription.  Plaintiff's medical records show that the prescription was discontinued because Plaintiff had no medical need for it, thus, there can be no deliberate indifference.

### 1.     Retaliation Claim

A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation under section 1983.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

13

reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff must also show that his pursuit of his written and/or verbal complaints about his medication was the substantial or motivating factor behind the discontinuation of his morphine prescription. Brodheim, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). In this Circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to" Defendants' motivation. Brodheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendants for the adverse action were false and pretextual. McCollum v. California Department of Corrections and Rehabilitation, 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted). Direct evidence of improper motive is only rarely available, and this case presents no exception. Watison, 668 F.3d at 1114; Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1302 (9th Cir. 1999).

Because a prisoner's First Amendment rights are necessarily curtailed, a successful retaliation claim requires a finding that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct he contends was retaliatory. Pratt, 65 F.3d at 806.

As an initial matter, Defendant does not dispute Plaintiff engaged in protected conduct under the First Amendment by filing an inmate appeal or that Plaintiff's free speech rights were not chilled. In addition, Defendant does not dispute adverse action was taken by her in reporting her observation

14

of Plaintiff cheeking his morphine medication. Accordingly, the first, third, and fourth elements are undisputed.

### a. Retaliatory Motive

The Court finds that there is a lack of sufficient evidence to raise a triable issue of fact regarding the existence of a retaliatory motive on the part of Defendant Adams or Defendant Jennings. McCollum, 647 F.3d at 882-83; Pratt, 65 F.3d at 808.

Plaintiff contends that LVN Calistro expressed interest in the level of morphine he was being administered after it was increased in July 2012. More specifically, Plaintiff contends that on July 23, 2013, Calistro commended on the increase with disapproval. (ECF No. 11 at ¶¶ 7-9.) However, contrary to Plaintiff's contention, Defendant Calistro has submitted undisputed evidence that she was not at work on July 23, 2013, and Plaintiff's medication was not increased until August 1, 2013. (UDF 31-34.) Nonetheless, Plaintiff's allegations are not limited to the single comment in July 2013.

It is undisputed that Defendant LVN Calistro is not qualified to second guess the treatment decisions, including prescription of medication, of an inmate's treating physicians. (UDF 8.) In addition, LVN Calistro is not qualified, nor does she have the authority to prescribe medication. (UDF 7.) Thus, if LVN Calistro notices that an inmate's medication dosage has changed, she may inquire about it solely as a precaution in order to ensure no errors have been made by the pharmacy. (UDF 9.)

Defendant Calistro was responsible for dispensing medications and ensuring that the appropriate medication and dosages were administered. (UDF 6.) In addition, Defendant Calistro's duties as an LVN include documentation and reporting of any observation of an inmate cheeking or attempting to cheek his medication. (UDF 26-29.)

Plaintiff contends that LVN Calistro falsely accused him of cheeking his morphine in order to retaliate against him for filing an appeal log number VSP-HC-13001138. (UDF 82.) In that appeal, Plaintiff complained that he was having problems due to throat surgery, he was unable to eat solid food, and the nursing staff was making him drink Gatorade too quickly. (UDF 81.) It is undisputed that Plaintiff did not name LVN Calistro in the appeal, and LVN Calistro played no role in adjudicating the appeal. (UDF 83-84.) Defendant Calistro declares that on August 18, 2013, when

she observed Plaintiff cheeking his morphine, she was not aware of any CDCR 602 inmate appeals that Plaintiff had filed against her or other nursing staff. (Calistro Decl. ¶ 21.)

In the operative second amended complaint, Plaintiff alleges the following:

The reason for Defendant LVN Calistro's desire to retaliate against me and punish me was because prior to the whole entire cheeking incident, on 8/1/2013 I filed an unrelated CDCR-602 #VSP-HC-13001138, alleging inadequate medical care following a recent neck surgery. (See, attached Exhibit B.)

Shortly after filing CDCR-602 # VSP-HC-13001138, but before the cheeking incident, I encountered Defendant LVN Calistro at the pill-line and she asked me why I filed that appeal, and I responded for the reasons stated on the appeal form.

Defendant LVN Calistro responded verbat[i]m, "I'm tired of scum-bag inmates always complaining of inadequate medical care when most of you never had medical insurance or treatment when you were free."

Defendant LVN Calistro followed those remarks by giving me her opinion that she did not think I needed morphine meds and it was shortly after this that she accused me of cheeking my morphine meds.

(Sec. Am. Compl. at ¶¶ 47-50.)

At his deposition, Plaintiff indicated that after filed the appeal, log number VSP-HC-13001138, LVN Calistro stated "Oh, you are 602-ing our clinic?" (Pl. Dep at 30:20-21.)

In contrast, Defendant LVN Calistro declares, in part, the following:

I am aware that [Plaintiff] alleges that I disapprovingly commented on an increase in his morphine dosage on July 23, 2013. However, I was not at work on July 23, 2013. In fact, I was out of work for nearly the entire month of July 2013, due to a medical condition, and I collected State Disability Insurance (SDI) during that time. I returned to work on July 29, 2013. . . .

Between my return to work on July 29, 2013, and August 18, 2013, when I observed [Plaintiff] cheeking his medication, I never had any conversations with [Plaintiff] regarding his morphine dosage.

On August 18, 2013, I was not aware of any CDCR 602 inmate appeals that [Plaintiff] had filed against me or other nursing staff. Accordingly, I could not have made—and did not make—any comments to [Plaintiff] about his appeal activities prior to that date.

(Calistro Decl. ¶¶ 19-21.)

16

It is undisputed that Plaintiff filed an appeal in log number VSP-HC-13001138 on August 1, 2013, and Plaintiff was accused by LVN Calistro of cheeking his morphine medication on August 18, 2013. However, the reason behind the finding and reporting that Plaintiff was cheeking his medication is genuinely disputed. Plaintiff contends that based on Calistro's statements to him it was out of retaliation for filing a grievance regarding actions by other medical staff. Yet, Defendant Calistro declares that she was not aware of the grievance and, even if she was aware, it would not have played any influence into her observation of Plaintiff's cheeking on August 18, 2013, and obligation to report such conduct. Based on the parties conflicting evidence, there is a genuine issue of material fact as to whether Defendant Calistro was aware of the appeal, made comments to Plaintiff regarding the appeal expressed her disapproval of his prescription for morphine, and ultimately accused Plaintiff of cheeking his morphine in retaliation for filing an inmate appeal. The timing of Defendant Calistro's actions also may support an inference that the adverse action (accusation of cheeking) was because of protected conduct. While the evidence is not conclusive, and whether LVN Calistro retaliated against Plaintiff is disputed, based on the conflicting evidence that determination must be resolved by a trier of fact.

### b. Legitimate Penological Interest

As previously stated, Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Pratt, 65 F.3d at 806. Plaintiff must demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of," Pratt, 65 F.3d at 808, and the Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory," id. at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). In evaluating the existence of a legitimate correctional goal, there must be a valid, rational connection between the rule, regulation, or action and the legitimate, neutral governmental interest put forward to just it. Brodheim, 584 F.3d at 1272-73 (citing Shaw v. Murphy, 532 U.S. 223, 228 (2001)) (quotation marks omitted). In addition, courts should consider (1) the existence of alternate means of exercising the right available to inmates; (2) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready

alternatives available to the prison for achieving the governmental objectives.  Id. (citing Shaw, 532 U.S. at 228) (quotation marks omitted).

Defendant submits that the reporting of Plaintiff cheeking his morphine medication served a legitimate correctional purpose.  However, based on the evidence submitted by Plaintiff that he filed an appeal on August 1, 2013, and Calistro made comments about the appeal and her disapproval of his morphine prescription, there is a genuine issue of fact as to whether her actions were done to serve a legitimate penological interest or were for some other non-legitimate penological interest for exercising his first amendment right to free speech.

While Defendant argues that the reporting of her observation that Plaintiff had cheeked his medication, furthered a legitimate correctional purpose, based on Plaintiff's evidence and the filing of his inmate appeal, a genuine issue of material fact exists on this issue.  Although a prisoner's health and safety and preservation of internal order and discipline are legitimate correctional goals, the reason behind Defendant Calistro's adverse action is disputed.  Indeed, "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right."  Bruce, 351 F.3d at 1289-90.  If a jury finds that LVN Calistro falsely accused Plaintiff of cheeking his morphine in retaliation for filing an inmate appeal, it could reasonably find for Plaintiff.  Id. at 1289 ("But, if, in fact, the defendants used the gang validation procedure as a cover or a ruse to silence and punish Bruce because he filed grievances, they cannot assert that Bruce's validation served a valid penological purpose, even though he may have arguably ended up where he belonged.") (citing Rizzo, 778 F.2d at 532).  Accordingly, Defendant Calistro's motion for summary judgment on Plaintiff's retaliation claim should be denied.

2.  Medical Deliberate Indifference Claim

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  To

state a claim, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

It is undisputed that LVN Calistro reported he observation of Plaintiff cheeking his morphine medication and noted that Plaintiff denied such cheeking. (UDF 51.) LVN Calistro declares that she did not know when she reported Plaintiff for cheeking his medication what action, if any, would be taken in response. (Calistro Decl. ¶¶ 16-17.) It is undisputed that there is no uniform or standard requirement that a prescription medication be immediately revoked simply because the inmate is suspected of cheeking. (UDF 55.) Each inmate who is suspected of cheeking is subsequently evaluated by his prescriber on a case-by-case basis, and action taken is tailored to that inmate's individual circumstances and needs. (UDF 56.) Indeed, it was the responsibility of Plaintiff's treating physician to evaluate the report that Plaintiff had checked his medication and to determine if any action should be taken. (UDF 57.) An inmate with a medical need for morphine who is prone to diversion or cheeking will still receive the morphine, but in a liquid or crushed form so that it cannot be cheeked. (UDF 58.) Thus, it is undisputed that Defendant LVN Calistro played no role in the decision to discontinue Plaintiff's morphine prescription. (UDF 59-60.) The determination that Plaintiff no longer had a medical need for morphine and to discontinue his morphine prescription rested solely on Plaintiff's physician, not LVN Calistro. (UDF 56, 57, 59, 60.) Furthermore, even after suspension of cheeking, if Plaintiff had a continuing medical need for morphine, his prescription would not have been discontinued. (UDF 58.)

Plaintiff was slowly tapered off of the morphine to prevent any physical discomfort that may be caused by withdrawal from opiates. (UDF 61-62.) In addition, Plaintiff was provided with a non-narcotic medication, carbamazepine, to treat his pain, and other limited amounts of over-the-counter

medications would have been available to Plaintiff through the prison canteen. (Barnett Decl. ¶ 22.) Plaintiff's medication records do not reflect that Plaintiff suffered from any withdrawal symptoms after the tapering and subsequent discontinuing of his morphine. As noted by Dr. Barnett there was no healthcare request form in which Plaintiff reported withdrawal symptoms following the tapering and discontinuation of his morphine prescription in August 2013. (Barnett Decl. ¶ 23.) In fact, in a healthcare services request dated August 30, 2013, Plaintiff only asked for a refill of his allergy medication, and made no mention of any withdrawal symptoms. (Barnett Decl., Ex. B at 0023.) In addition, Plaintiff was examined by NP Maddox on September 11, 2013, and described no withdrawal symptoms during the examination. On that date, NP Maddox notes that Plaintiff agreed to take Tylenol for pain (a drug he had previously refused to take) in addition to the carbamazepine. (Id. at Ex. B at 0026.)

Furthermore, in mid-September 2013, Plaintiff was evaluated by a physician to determine the propriety of prescribing him morphine. (Barnett Decl. ¶ 18.) After evaluation and review of Plaintiff's records, the physician found no support for continued use of opiates and found that Plaintiff was at "high risk for complications [from morphine,] including overdose, death, and misuse; avoid opiates." (Id.) While Plaintiff may disagree with the doctor's determination and assessment, such difference of opinion does not give rise to a claim for deliberate indifference. Jackson, 90 F.3d at 332. Based on the evidence presented, the Court finds that Defendant Calistro is entitled to summary adjudication on this claim because there is no genuine issue of material fact.

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's Calistro motion for summary be denied as to Plaintiff's retaliation claim and granted as to Plaintiff's deliberate indifference claim; and

2. Judgment be entered in favor of Defendant Calistro on Plaintiff's Eighth Amendment claim only.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after

being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 14, 2017**

UNITED STATES MAGISTRATE JUDGE